**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN F. BROWN, JR.,<br><br>               Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN,<br>ACTING COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>               Defendant. | Civil Action No. 15-3135 (JLL)<br><br><br>**OPINION** |

**LINARES**, District Judge.

This matter comes before the Court upon the appeal of John F. Brown, Jr. ("Plaintiff") from the final decision of the Commissioner upholding the final determination by Administrative Law Judge ("ALJ") Elias Feuer denying Plaintiff's application for disability insurance benefits ("DIB") under the Social Security Act (the "Act"). The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g), and resolves this matter on the parties' briefs pursuant to Local Civil Rule 9.1(f). After reviewing the submissions of both parties, for the following reasons, the final decision of the Commissioner is affirmed.

## I.   BACKGROUND

### A.     Procedural History

On August 25, 2011, Plaintiff filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning March 23, 2011. (R.[1] 169.) Plaintiff's application was denied initially on February 29, 2012, and upon reconsideration on November 15,

---

[1] "R." refers to the Administrative Record, which uses continuous pagination and can be found at ECF No. 5.

2012. (R. 115-17.)  Thereafter, Plaintiff filed a written request for hearing on December 4, 2012

pursuant to 20 CFR 404.929 *et seq.*  (R. 118-19.)  A hearing was held on October 8, 2013 in

Newark, New Jersey before the ALJ.  (R. 50-90.)  Plaintiff appeared and testified, as well as an

impartial vocational expert.  (*Id.*)

Following the hearing, the ALJ denied Plaintiff's application in a written decision dated

December 26, 2013.  (R. 30-43.)  Plaintiff timely filed a request for review with the Appeals

Council (R. 7-29), and the Appeals Council affirmed the decision of the ALJ on April 3, 2015.  (R.

1-6.)  On May 4, 2015, Plaintiff commenced this action.  (ECF No. 1.)  Plaintiff filed a brief in

support (ECF No. 8 ("Pl. Br.")) and Defendant filed a brief in opposition (ECF No. 9 ("Def. Br.")).

A review of the docket reveals that Plaintiff did not file a reply brief.

**B.     Factual History**

1. Plaintiff's Self-Reported Background

Plaintiff was born on June 3, 1960. (R. 169.)  He was 50 years old on the alleged disability

date of March 23, 2011 and is 55 years old as of this writing.  (*Id.*)  From March 1981 to March

2011, Plaintiff was employed as a municipal maintenance worker for the Borough of Rutherford

Recreation Commission, an "unskilled" position within the meaning of the Act.  (R. 191, 198-

204.)  Plaintiff's job duties included cutting grass, painting, and shoveling the snow and removing

the ice from borough facilities and sidewalks.  (R. 192.)  He reported that the heaviest weight he

lifted as part of the job was "100 lbs. or more" and that he frequently lifted "25 lbs."  (*Id.*)

2. <u>Medical Evidence</u>

After injuring his back on March 23, 2011 while shoveling snow, Plaintiff was referred to Dante Implicito, M.D.  (R. 249-66.)[2]  On March 24, 2011, upon physical examination, Dr. Implicito remarked that Plaintiff was in "obvious discomfort" and that his back was "exquisitely tender."  (R. 265.)  According to Dr. Implicito's notes, Plaintiff reported that the pain radiated into his right buttock and that it was severely painful (he graded it is an 8 on a scale of 10, with 10 being the most severe pain imaginable).  (*Id.*)  Straight leg testing and prone knee-bend testing were negative bilaterally.  (*Id.*)

On March 21, 2011, Dr. Implicito reviewed an MRI of Plaintiff and reported that "everything appears to be fine" with the fusion performed previously, but noted "some degeneration" of the adjacent disc at L4-L5 and L5-S1.  (R. 264.)  Dr. Implicito scheduled an epidural injection at L5-S1, which he hoped would "quell [Plaintiff's] back and right-sided leg pain."  (*Id.*)

In notes dated May 12, 2011, Dr. Implicito stated that despite the injection, Plaintiff "does not seem to be getting any better and perhaps even worse."  (R. 262.)  According to the notes, Plaintiff reported that the pain was worse with standing and walking and that he received relative relief by sitting or bending.  (*Id.*)  Upon physical examination, straight-leg testing was negative and Plaintiff was tender to palpation.  (*Id.*)  Dr. Implicito recommended a trial of bilateral lumbar facet injections.  (*Id.*)  On May 27, 2011, Dr. Implicito referred Plaintiff for radio frequency ablation of the area and discussed potential surgical options with Plaintiff.  (R. 261.)

---

[2] Plaintiff had previously presented to Dr. Implicito after a November 7, 2005 work-related injury and underwent back surgery consisting of a three-level posterior lumbar fusion at L2-L3 and L3-L4.  (R. 267-74.)  Thereafter, Plaintiff returned to work, and continued to work until the date of the alleged onset of disability.  (*See* R. 265.)

On June 27, 2011, Dr. Implicito reported that Plaintiff was "miserable" with work and daily living.  (R. 260.)  Dr. Implicito opined that Plaintiff had "run out of non-surgical options" and referred him for a CT discogram of his lumbar spine. (*Id.*) On July 21, 2011, Dr. Implicito reported that the discogram revealed evidence of degenerative discs at both L4-5 and L5-S1 subadjacent to Plaintiff's past fusion procedure. (R. 259.) Dr. Implicito explained the surgical options to Plaintiff and further opined that he believed that Plaintiff was "permanently disabled and unable to return to his occupation . . . [because] [h]e is unable to lift, twist or bend with sufficient frequency or effort to tolerate his necessary job requirements." (*Id.*)

On September 29, 2011, Plaintiff informed Dr. Implicito that he was declining surgery and instead was "going to try and live with the pain, use up his accumulated disability time and retire" which Dr. Implicito viewed as a "very rational and reasonable option for [Plaintiff]." (R. 258.) At this time, Dr. Implicito discharged Plaintiff from his care. (*Id.*)

Plaintiff continued pain management treatment with Amit Tailor, M.D. (R. 309-75) and Jaroslaw Pondo, M.D. (R. 383-95) beginning in October 2011.  Plaintiff saw Dr. Tailor on a monthly basis (or thereabouts) from October 2011 through March 2013, and the records indicate that Dr. Tailor essentially renewed Plaintiff's medications, including Percocet, Endocet, Valium, and Zyprexa, that the chronic issues were controlled on the current regimen, and that Plaintiff was feeling "generally well." (R. 309-75.) Plaintiff saw Dr. Pondo from March 2013 through the time of the hearing in December 2013, and Dr. Pondo similarly continued the narcotic pain medication regimen. (R. 383-95.)

On February 15, 2012, consultative examiner Richard Mills, M.D. noted that Plaintiff drove himself to the appointment, put his shoes on and off without difficulty, ascended and descended the exam table without difficulty, and upon physical examination found that Plaintiff

possessed motor and grip and pinch strength of 5/5, and could squat, walk on heels, and walk on toes.  (R. 277.)  On February 29, 2012, state agency physicians noted that Plaintiff had a normal gait, suggested an RFC of a full range of light work, and opined that he could lift/carry 20 pounds occasionally and 10 pounds frequently; stand/walk for six hours and sit for six hours in an eight-hour day; occasionally climb ramps/stairs and ladders/ropes/scaffolds; and occasionally stop and crouch.  (R. 93-97.)

On April 26, 2012, Plaintiff was examined by workers compensation examiners Theodora Maio, M.D. and Cheryl Wong, M.D.  (R. 282-85.)  On June 6, 2012, Dr. Maio opined that Plaintiff had a "permanent orthopedic disability of 100%" after providing the following diagnosis: "Status post-traumatic injury to the lumbosacral spine being sprain and strain with disc herniation L4-5, L5-S1 (pre-existing) status post epidural injection, medical branch blocks and radiofrequency ablation with residuals of lumbosacral myositis and fibromyositis with loss of range of motion and sciatic neuralgia." (*Id.*)  On June 9, 2012, Dr. Wong opined that Plaintiff was "totally disabled as a unit from all causes." (R. 303-05.)  Dr. Wong noted that Plaintiff has a "history" of depression and bipolar disorder, but that he was last treated by a psychiatrist more than twenty years ago, and concluded that he suffered from "[b]ipolar disorder, current episode depressed . . . ." (R. 304, 306.)  Additionally, Dr. Wong noted that there was "tenderness" to percussion and palpation paraspinal muscles lumbar region with contraction and spasm on exam and concluded that Plaintiff suffered from "[b]ilateral L3-4 radiculitis as a result of this accident aggravating prior injury to back." (R. 305, 306.)

### 3. Relevant Hearing Testimony

Plaintiff was represented at the hearing by his attorney, Steen Gaechter.  (R. 52.)  Upon questioning from the ALJ, Plaintiff testified about his medical history and his medications.  (R.

53-63.)  He testified that he has trouble putting on his shoes, that his sister does his laundry and cooks for him, and that he accompanies her shopping, and that he could lift about eight to ten pounds at the most.  (R. 63-64.)  Plaintiff testified that he can walk up to 45 minutes at a time, that he could stand and sit for 30-45 minutes at a time, and that he needed about 20 minutes recovery afterwards.  (R. 73-74, 78.)  Plaintiff further testified that the only activity he did at a two hour increment was going shopping with his sister.  (R. 78.)  The ALJ noted that he had difficulty "following the thread" of Plaintiff's testimony with respect to his physical limitations.  (R. 76.)

The ALJ asked the vocational expert to consider a hypothetical individual who was limited to light work; never climbing ladders, ropes, or scaffolds; only occasionally stooping, kneeling, crouching, crawling, and climbing ramps/stairs; and needing the option to sit and stand at will.  (R. 80-83).  The vocational expert testified that the individual would be unable to perform Plaintiff's past work, but could perform the unskilled light jobs of ticket seller (cashier), parking lot cashier, and school bus monitor.  (*Id*.)  On cross-examination, the VE testified that the same hypothetical individual would be unemployable assuming that he would be off task more than ten percent out of an eight hour work day due to symptoms from pain, and/or also assuming the individual was absent two or more days per month due to symptoms from low back pain.  (R. 83-85.)

## II.    STANDARD OF REVIEW

A reviewing court will uphold the Commissioner's factual decisions if they are supported by "substantial evidence."  42 U.S.C. §§ 405(g), 1383(c)(3); *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000).  Substantial evidence is "more than a mere scintilla but may be less than a preponderance."  *Woody v. Sec'y of Health & Human Servs.*, 859 F.2d 1156, 1159 (3d Cir. 1988).  It "does not mean a large or considerable amount of evidence, but rather such relevant evidence as

a reasonable person might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487

U.S. 552, 565 (1988) (citation omitted).  Not all evidence is considered substantial.  For instance,

> [a] single piece of evidence will not satisfy the substantiality test if
> the [Commissioner] ignores, or fails to resolve, a conflict created by
> countervailing evidence. Nor is evidence substantial if it is
> overwhelmed by other evidence – particularly certain types of
> evidence (e.g. that offered by treating physicians) – or if it really
> constitutes not evidence but mere conclusion.

*Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (quoting *Kent v.

Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)).  The ALJ must make specific findings of fact to

support his ultimate conclusions.  *Stewart v. Sec'y of Health, Educ. & Welfare*, 714 F.2d 287, 290

(3d Cir. 1983).

The "substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*,

364 F.3d 501, 503 (3d Cir. 2004).  It does not matter if this Court "acting *de novo* might have

reached a different conclusion" than the Commissioner. *Monsour Med. Ctr. V. Heckler*, 806 F.2d

1185, 1190-91 (3d Cir. 1986) (citing *Hunter Douglas, Inc. v. Nat'l Labor Relations Bd.*, 804 F.2d

808, 812 (3d Cir. 1986)).  "[T]he district court . . . is [not] empowered to weigh the evidence or

substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182

(3d Cir. 1992) (citing *Early v. Heckler*, 743 F.2d 1002, 1007 (3d Cir. 1984)).  A Court must

nevertheless "review the evidence in its totality." *Schonewolf v. Callahan*, 972 F. Supp. 277, 284

(D.N.J. 1997) (citing *Daring v. Heckler*, 727 F.2d 64, 70 (3d Cir. 1984)).  In doing so, the Court

"must 'take into account whatever in the record fairly detracts from its weight.'" *Id.* (citing

*Willbanks v. Sec'y of Health & Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1988)).

A court must further assess whether the ALJ, when confronted with conflicting evidence,

"adequately explain[ed] in the record his reasons for rejecting or discrediting competent evidence."

*Ogden v. Bowen*, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing *Brewster v. Heckler,* 786 F.2d 581

7

(3d Cir. 1986)). If the ALJ fails to properly indicate why evidence was discredited or rejected, the Court cannot determine whether the evidence was discredited or simply ignored. *See Burnett v. Comm'r of Soc. Sec,* 220 F.3d 112, 121 (3d Cir. 2000) (citing *Cotter v. Harris,* 642 F.2d 700, 705 (3d Cir. 1981)).

## III.   APPLICABLE LAW

### A.   The Five-Step Process for Evaluating Whether a Claimant Has a Disability

A claimant's eligibility for benefits is governed by 42 U.S.C. § 1382. Pursuant to the Act, a claimant is eligible for benefits if he meets the income and resource limitations of 42 U.S.C. §§ 1382(a)(1)(A)-(B) and demonstrates that he is disabled based on an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). A person is disabled only if his physical or mental impairment(s) are "of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

To determine whether the claimant is disabled, the Commissioner performs a five-step sequential evaluation. *See generally* 20 C.F.R. § 404.1520(a)(4)(i)–(v). The claimant bears the burden of establishing the first two requirements. The claimant must establish that he (1) has not engaged in "substantial gainful activity" and (2) is afflicted with "a severe medically determinable physical or mental impairment." 20 C.F.R. §§ 404.1520(b)–(c), 404.1521. If a claimant fails to demonstrate either of these two requirements, DIBs are denied and the inquiry ends. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). If the claimant successfully proves the first two requirements, the inquiry proceeds to step three which requires the claimant to demonstrate that

8

his impairment meets or medically equals one of the impairments listed in 20 C.F.R. Part 404

Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526. If the claimant demonstrates that

his impairment meets or equals one of the listed impairments, he is presumed to be disabled and

therefore, automatically entitled to DIBs. *Id.* If he cannot make the required demonstration,

further examination is required.

The fourth step of the analysis asks whether the claimant's residual functional capacity

("RFC") permits him to resume his previous employment. *Id.* If a claimant is able to return to his

previous employment, he is not disabled within the meaning of the Act and is not entitled to DIBs.

*Id.* If the claimant is unable to return to his previous employment, the analysis proceeds to step

five. At this step, the burden shifts to the Commissioner to demonstrate that the claimant can

perform a job that exists in the national economy based on the claimant's RFC, age, education,

and past work experience. 20 C.F.R. § 404.1520(g). If the Commissioner cannot satisfy this

burden, the claimant is entitled to DIBs. *Yuckert*, 482 U.S. at 146 n.2.

**B.     The Requirement of Objective Evidence**

Under the Act, disability must be established by objective medical evidence. "An

individual shall not be considered to be under a disability unless he furnishes such medical and

other evidence of the existence thereof as the [Commissioner] may require." 42 U.S.C. §

423(d)(5)(A). Notably, "[a]n individual's statement as to pain or other symptoms shall not alone

be conclusive evidence of disability as defined in this section." *Id.* Specifically, a finding that one

is disabled requires:

> [M]edical signs and findings, established by medically acceptable
> clinical or laboratory diagnostic techniques, which show the
> existence of a medical impairment that results from anatomical,
> physiological, or psychological abnormalities which could
> reasonably be expected to produce the pain or other symptoms
> alleged and which, when considered with all evidence required to be

> furnished under this paragraph . . . would lead to a conclusion that
> the individual is under a disability.

*Id.*; *see* 42 U.S.C. § 1382c(a)(3)(A).  Credibility is a significant factor.  When examining the record: "The adjudicator must evaluate the intensity, persistence, and limiting effects of the [claimant's] symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work-related activities." SSR 96-7p, 1996 WL 374186 (July 2, 1996).  To do this, the adjudicator must determine the credibility of the individual's statements based on consideration of the entire case record.  *Id.*

The list of "acceptable medical sources to establish whether [a claimant] has a medically determinable impairment" includes licensed physicians, but does not include nurses.  20 C.F.R. § 404.1513(a).  Though the ALJ "may also use evidence from other sources to show the severity of [a claimant's] impairments," this evidence is "entitled to consideration as additional evidence" and does not need to be given the same weight as evidence from acceptable medical sources.  20 C.F.R § 404.1513(d)(1); *Hatton v. Comm'r of Soc. Sec.,* 131 Fed. App'x 877, 878 (3d Cir. 2005).  Factors to consider in determining how to weigh evidence from medical sources include (1) the examining relationship, (2) the treatment relationship, including the length, frequency, nature, and extent of the treatment, (3) the supportability of the opinion, (4) its consistency with the record as a whole, and (5) the specialization of the individual giving the opinion.  20 C.F.R. § 404.1527(c).

## IV.   DISCUSSION

### A.   ALJ Miller's Decision

On December 26, 2013, the ALJ issued a decision denying Plaintiff's application, finding that Plaintiff was not disabled during the relevant time period.  (R. 30-43.)  At step two, the ALJ determined that Plaintiff had the following severe impairment: a lumbar back injury to L4-S1.  (R.

35.)[3]  At step three, the ALJ determined that Plaintiff did not have an impairment (or combination of impairments) that met or medically equaled the severity of a listed impairment.  (R. 35-36.) Before proceeding to step four, the ALJ formulated Plaintiff's RFC as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he can never climb ladders, ropes or scaffolds and can only occasionally climb ramps or stairs, stoop, kneel, crouch, or crawl.  He does also require a sit stand option.

(R. 36.)

At step four, the ALJ found that Plaintiff was unable to perform any past relevant work because it was performed at a medium exertional level.  (R. 38.)  At step five, based on the VE testimony, the ALJ determined that, considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as cashier ticket seller (DOT No. 211.467-030), parking lot cashier (DOT No. 915.743-010), or school bus monitor (DOT No. 372.667-042).  (R. 38-39.)  Accordingly, the ALJ concluded that Plaintiff did not meet the standard for disability under the Act during the relevant period.  (R. 39.)

## B.   The ALJ Appropriately Afforded No Significant Weight to the Opinions of Dr. Maio and Dr. Wong.

The ALJ afforded the opinions of Dr. Maio and Dr. Wong "no significant weight" because their "restrictive findings are unsupported and inconsistent with the claimant's reported daily activities and the objective findings by other physicians."  (R. 37.)

Plaintiff argues that the ALJ improperly discredited the opinions of Dr. Maio and Dr. Wong without sufficient explanation.  (Pl. Br. at 14-16.)  In particular, Plaintiff contends that the reports

---

[3] The ALJ further noted that the evidence failed to establish that Plaintiff's cervical injury at C5-C6 had the requisite duration of twelve months.  (R. 35.)

of Dr. Maio and Dr. Wong contain detailed physical examination findings, "which if taken as credible, show that Plaintiff's impairment is close to listing level severity under 1.04 in that they found reflex loss, sensory deficits, and weakness." (*Id.* at 14.)  Additionally, Plaintiff asserts that Dr. Wong's report "shows the presence of mental impairments which in the opinion of Dr. Wong would interfere with occupational, social, and activities of daily living pursuits." (*Id.* at 15.)

In opposition, Defendant argues that the ALJ properly rejected the conclusory findings of Dr. Maio and Dr. Wong since they examined Plaintiff solely in connection with his worker's compensation claim. (Def. Br. at 7-10.)  In addition to noting that any statement from a physician that a claimant is "unable to work" is entitled to no weight, Defendant points out that an opinion made in connection with a worker's compensation claim is of limited significance in a social security matter because of the differing standards between the two programs.   (*Id.* at 8.) Furthermore, Defendant argues that neither report contains any actual assessment of Plaintiff's functional limitations and that they are inconsistent with objective findings of other physicians. (*Id.* at 9-10.)

The Court agrees with Defendant.  As an initial matter, the Court notes—and Plaintiff concedes—that the decision of whether or not a claimant is disabled is reserved for the Commissioner, such that the Commissioner "will not give any special significance to the source of an opinion" on the issue.  20 C.F.R. § 404.1527(d).  Additionally, Defendant correctly points out that opinions from physicians in the worker's compensation context have limited significance in the SSA context, given the differing standards utilized in each program.  *See Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999) (recognizing the "limited significance" of a physician's opinion that was made in connection with the plaintiff's worker's compensation claim because it follows a different standard for determining disability); *see also Berrocal v. Astrue*, No. 10-02226, 2011

WL 890150, at *4 (D.N.J. Mar. 14, 2011) ("Reports generated in the context of a worker's compensation claim, therefore, are not highly probative.  The ALJ had discretion not to rely on those reports.  *See* 20 C.F.R. § 404.1504.").

Furthermore, the ALJ adequately explained how the reports were unsupported and inconsistent with the claimant's reported daily activities and the objective findings by other physicians.  For example, Plaintiff reported that he tends to go for walks (up to 45 minutes at a time), does light housekeeping, and goes to the food store, which is not entirely consistent with the reports' conclusions of total disability.  (R. 63-64, 73-74, 78, 205.)  More significantly, the ALJ discussed the reports of Dr. Tailor, Dr. Mills, and the state agency physicians, which are inconsistent with the reports of Dr. Maio and Dr. Wong.  Indeed, as the ALJ specifically noted, Dr. Tailor continually remarked that Plaintiff reported continued management of his chronic issues and that he was "feeling generally well," as evidenced by symmetric reflexes with full 5/5 strength in all extremities.  (R. 37 (citing Exs. B9F and B10F).)  The ALJ also noted that Dr. Mills concluded that Plaintiff was capable of light work after observing that Plaintiff drove himself to the appointment, put his shoes on and off without difficulty, ascended and descended the exam table without difficulty, possessed motor and grip and pinch strength of 5/5, and could squat, walk on heels, and walk on toes.  (R. 37 (citing Ex. B4F).)  Furthermore, the ALJ noted that state agency physicians remarked that Plaintiff had a normal gait, suggested an RFC of a full range of light work, and opined that he could lift/carry 20 pounds occasionally and 10 pounds frequently; stand/walk for six hours and sit for six hours in an eight-hour day; occasionally climb ramps/stairs and ladders/ropes/scaffolds; and occasionally stop and crouch.  (R. 37 (citing Exs. B1A and B3A).)

Accordingly, the Court finds that the ALJ properly afforded "no significant weight" to the reports of worker's compensation examiners Dr. Maio and Dr. Wong.

**C.      The Evidence Supporting Plaintiff's Alleged Mental Impairment is Not Sufficient to Warrant Remand.**

Plaintiff argues that the ALJ failed consider the report of Dr. Wong with respect to Plaintiff's diagnosed condition of bipolar syndrome with depressive features.  (Pl. Br. at 17.) Plaintiff asserts that the failure to consider the mental aspects of Plaintiff's disability "could have" impacted the decision, "could have" affected the VE's testimony, and "could have" been enough to support a finding that his condition "perhaps" equaled a listed impairment.  (*Id.*)

Defendant argues that remand is not warranted for two reasons. First, Defendant contends that Plaintiff—who did not allege any mental impairment at the time of his application for DIB— "has not demonstrated that his alleged mental impairment resulted in any specific functional limitations that prevented him from performing the unskilled jobs identified by the [VE]." (Def. Br. at 5-6.)  Second, Defendant argues that Plaintiff has not shown that his impairments in combination equal a listed impairment.  (*Id.* at 6-7.)

The Court agrees with Defendant.  Plaintiff did not indicate any sort of mental impairment in his application for DIB (R. 199), and the only evidence in the record supporting Plaintiff's mental impairment is Dr. Wong's report, which notes that Plaintiff was diagnosed with bipolar disorder more than twenty years ago and that he last saw a psychiatrist more than twenty years ago. (R. 303-06.)  More to the point, the Court agrees that Plaintiff has not demonstrated how his alleged mental impairment prevents him from performing the low skill jobs identified by the VE, such as cashier ticket seller (DOT No. 211.467-030), parking lot cashier (DOT No. 915.743-010), or school bus monitor (DOT No. 372.667-042).  The Court also agrees that Plaintiff's assertion that "consideration of the mental impairments due to Plaintiff's depression and level of pain could have been enough to support a finding that his condition perhaps 'equaled' a listed impairment" is not enough to convince the Court that remand is warranted.  Plaintiff bears the burden of presenting

14

evidence that an impairment or combination of impairments equals a listed impairment, by demonstrating that it is "equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 404.1526.  The Court finds that Plaintiff—pointing to no evidence aside from Dr. Wong's report—has not shown how he could satisfy this burden on remand on this issue, and accordingly the Court concludes that remand is not warranted. *See Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005) (holding that remand is not warranted where error by ALJ is harmless and would not affect the outcome of the case).

### D.    Substantial Evidence Supports the ALJ's Formulation of Plaintiff's Residual Functional Capacity.

As noted, the ALJ found that Plaintiff had the RFC "to perform light work as defined in 20 CFR 404.1567(b) except he can never climb ladders, ropes or scaffolds and can only occasionally climb ramps or stairs, stoop, kneel, crouch, or crawl.  He does also require a sit stand option."  (R. 36.)

Plaintiff argues that the RFC is not based on substantial evidence.  (Pl. Br. at 18-19.) Plaintiff contends that the ALJ improperly relied on the report of Dr. Mills because that report does not include any specific assessments, and is inconsistent with other medical evidence in the record.  (*Id.*)  In addition, Plaintiff contends that the ALJ failed to take into account the presence of concentration problems indicated by the medical records.  (*Id.* at 19.)

In opposition, Defendant argues that the ALJ did not exclusively rely on Dr. Mills' report, and also relied on the state agency physicians' opinion that Plaintiff could perform light work. (Def. Br. at 10.)  Additionally, Defendant contends that Plaintiff's argument regarding alleged concentration problems is without merit because Plaintiff failed to specifically cite to the record in making the argument and does not explain how such concentration problems prevent Plaintiff from performing the unskilled, light work jobs identified by the VE.  (*Id.*)

15

The Court agrees with Defendant. The ALJ gave "significant weight" to the opinion of Dr. Mills in formulating the RFC. (R. 37.) Dr. Mills noted that Plaintiff drove himself to the appointment, put his shoes on and off without difficulty, ascended and descended the exam table without difficulty, and upon physical examination found that Plaintiff possessed motor and grip and pinch strength of 5/5, and could squat, walk on heels, and walk on toes. (R. 277.) This is consistent with the RFC arrived at by the ALJ.

More to the point, the ALJ explicitly stated that he considered the record as a whole in formulating the RFC, and substantial evidence supports his conclusion. In addition to referencing Dr. Mills' report, the ALJ also specifically referenced Dr. Tailor's treatment notes and the state agency physicians. (R. 37-38.) Plaintiff saw Dr. Tailor on a monthly basis (or thereabouts) from October 2011 through March 2013, and the records indicate that Dr. Tailor essentially renewed Plaintiff's medications, including Percocet, Endocet, Valium, and Zyprexa, that the chronic issues were controlled on the current regimen, and that Plaintiff was feeling "generally well." (R. 309-75.) On February 29, 2012, state agency physicians noted that Plaintiff had a normal gait, suggested an RFC of a full range of light work, and opined that he could lift/carry 20 pounds occasionally and 10 pounds frequently; stand/walk for six hours and sit for six hours in an eight-hour day; occasionally climb ramps/stairs and ladders/ropes/scaffolds; and occasionally stop and crouch. (R. 93-97.) Thus, the Court finds that the ALJ's formulation of Plaintiff's RFC is supported by substantial evidence.[4]

---

[4] Additionally, the Court agrees that Plaintiff has not sufficiently demonstrated how the presence of concentration problems in the record would result in a different RFC or a determination that Plaintiff was unable to perform the unskilled, light work jobs identified by the VE. *See Rutherford*, 399 F.3d at 553 (holding that remand is not warranted where error by ALJ is harmless and would not affect the outcome of the case).

### E.   There is Substantial Evidence in the Record to Uphold the ALJ's Credibility Analysis.

Plaintiff argues that the ALJ improperly discounted Plaintiff's subjective complaints of pain without properly explaining his rationale for doing so, and that the medical evidence supports Plaintiff's subjective statements.  (Pl. Br. at 19-23.)  The Court disagrees and finds that the ALJ properly considered the subjective complaints of pain, and that substantial evidence supports the ALJ's decision.

A claimant's own description of his impairment and symptoms, standing alone, is not enough to establish disability. 20 C.F.R. §§ 404.1528(a), .1529(a), 416.928(a); *see also Prokopick v. Comm'r of Soc. Sec.*, 272 F. App'x. 196, 199 (3d Cir. 2008).  Instead, the ALJ must consider "all of the available evidence" when evaluating the intensity and persistence of a claimant's symptoms, including objective medical evidence and a claimant's statements about his symptoms. 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1); *see also Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999) ("This obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it.").  When the medical evidence demonstrates that a claimant persistently attempted to obtain relief from pain, it "lends support" to the claimant's subjective allegations of pain. S.S.R. 96-7(p).[5]  Inconsistencies between a claimant's statements and the medical evidence must be explored; subjective statements of pain must be consistent with objective medical evidence and other evidence.  20 C.F.R. §§

---

[5] S.S.R. 96-7(p) states in relevant part:

> In general, a longitudinal medical record demonstrating an individual's attempts to seek medical treatment for pain or other symptoms and to follow that treatment once it is prescribed lends support to an individual's allegations of intense and persistent pain or other symptoms for the purposes of judging the credibility of the individual's statements.  Persistent attempts by the individual to obtain relief of pain or other symptoms, such as by increasing medications, trials of a variety of treatment modalities in an attempt to find one that works or that does not have side effects, referrals to specialists, or changing treatment sources may be a strong indication that the symptoms are a source of distress to the individual and generally lend support to an individual's allegations of intense and persistent symptoms.

404.1529(c)(4), 416.929(c)(4).   Furthermore, the Court notes that credibility findings as to a claimant's testimony regarding his pain and other symptoms fall exclusively to the ALJ, *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983), and are "virtually unreviewable on appeal." *Bieber v. Dep't. of the Army*, 287 F.3d 1358, 1364 (Fed. Cir. 2002).

Here, substantial evidence supports the RFC, including the ALJ's credibility determinations.   The Court agrees with Plaintiff that there is ample medical evidence of record demonstrating Plaintiff's persistent attempts to seek medical treatment, such that they "lend support" to Plaintiff's subjective allegations of pain. S.S.R. 96-7(p); *Mason v. Shalala*, 994 F.2d 1058, 1067-68 (3d Cir. 1993) ("Where medical evidence does support a claimant's complaints of pain, the complaints should then be given 'great weight' and may not be disregarded unless there exists contrary medical evidence.") (citations omitted).   However, the Court disagrees with Plaintiff's characterization that the ALJ "rejected" Plaintiff's complaints of pain.

The ALJ stated that "the objective medical evidence fails to support the claimant's allegations of *complete disability*." (R. 37 (emphasis added).)   Although it is true that the ALJ did not explicitly acknowledge that Plaintiff's allegations are entitled to great weight, at the same time the ALJ never stated that he found Plaintiff's subjective complaints to be entirely non-credible in formulating the RFC.   Indeed, the ALJ acknowledged that Plaintiff "still suffers from residual back pain." (R. 38.)   Further, he ALJ noted that he

> gave the claimant an opportunity to explain the inconsistency between his allegation that he could not perform and eight-hour job because of ongoing pain and Dr. Tailor's reports that the claimant's issues were controlled.   However, he was not able to explain the discrepancy or the basis for Dr. Tailor's repeated note.   Under these circumstances, even though he testified and said in Exhibit 3E that he was limited to lifting 10 pounds, I believe that the DDS assessment was correct and that the claimant was not precluded from performing all work activity.

(R. 38.)  The ALJ additionally noted that in formulating the RFC of light work he gave Plaintiff "the benefit of the doubt" and "factored in his allegation that he cannot sit or stand for extended periods of time without the need to shift positions."  (*Id.*)

The ALJ stated that he viewed the record in its entirety—including Plaintiff's allegations and the medical evidence—to formulate an RFC of light work.  The above-cited passage demonstrates how the ALJ weighed Plaintiff's testimony with the other medical evidence in the record.  There is no indication to the Court that the ALJ improperly weighed Plaintiff's allegations with the other evidence in the record, including the reports from Dr. Tailor, Dr. Mills, and the state agency physicians, which, as noted previously, all directly undermine Plaintiff's allegations.  *See* Part IV.B, *supra*.  In sum, the Court finds that substantial evidence supports the RFC, including the ALJ's credibility determinations, and the ultimate determination that Plaintiff is not disabled within the meaning of the Act.

### F.   Substantial Evidence Supports the ALJ's Hypothetical Questioning of the VE.

The ALJ asked the vocational expert to consider a hypothetical individual who was limited to light work; never climbing ladders, ropes, or scaffolds; only occasionally stooping, kneeling, crouching, crawling, and climbing ramps/stairs; and needing the option to sit and stand at will.  (R. 80-83).  The vocational expert testified that the individual would be unable to perform Plaintiff's past work, but could perform the unskilled light jobs of ticket seller (cashier), parking lot cashier, and school bus monitor.  (*Id.*)  On cross-examination, the VE testified that the same hypothetical individual would be unemployable assuming that he would be off task more than ten percent out of an eight hour work day due to symptoms from pain, and/or also assuming the individual was absent two or more days per month due to symptoms from low back pain.  (R. 83-85.)

Plaintiff argues that the ALJ's hypothetical question to the VE was deficient because it failed to take into account all of Plaintiff's limitations. (Pl. Br. at 23-24.) First, Plaintiff contends that the ALJ's decision fails to acknowledge that, upon questioning by Plaintiff's attorney, the VE testified that the hypothetical individual presented by Plaintiff's attorney would be unemployable. (*Id.* at 24; *see also* R. 80-85.) Second, Plaintiff argues that the questioning fails to take Plaintiff's alleged mental impairments, such as psychomotor retardation, depressed mood, speech latency, passive suicidal ideation, fatigue, insomnia, and diminished ability to think and concentrate. (Pl. Br. at 24; *see also* R. 303-05.)

Defendant argues that the ALJ submitted a proper hypothetical question to the VE, and that it included all of Plaintiff's credibly established limitations. (Def. Br. at 13.)

The Court finds that the hypothetical question posed to the VE was appropriate, since such questions must reflect each of Plaintiff's impairments that are adequately supported by the objective medical findings in the record. *See Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987) ("A hypothetical question must reflect all of a claimant's impairments that are supported by the record; otherwise the question is deficient and the expert's answer to it cannot be considered substantial evidence.") (citation omitted). In short, the record does not support a finding that Plaintiff would necessarily be off task more than ten percent out of an eight hour work day due to symptoms from pain, or absent two or more days per month due to symptoms from low back pain. For example, Plaintiff himself testified that he was "sure" he could put things in a box or a bag while standing. (R. 78-79.) Thus, the record does not support a finding that Plaintiff would be off task more than percent out of an eight hour day. Furthermore, Plaintiff points to no evidence in the record to support the contention that Plaintiff would necessarily be absent two or more days per month due to symptoms from low back pain. Likewise, as discussed in Part IV.C, *supra*,

Plaintiff's alleged mental impairments are not credibly established limitations, and Plaintiff does not explain how consideration of them by the VE would result in a different outcome.  Notably, Plaintiff's attorney had the opportunity to raise this point before the VE himself, but elected not to.

## V.    CONCLUSION

For the foregoing reasons, the decisions of the Commissioner and the ALJ are affirmed. An appropriate order follows this Opinion.


DATED: 11/23/15


_____
JOSE L. LINARES
U.S. DISTRICT JUDGE